UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LISA ANN THOMAS, as mother and next
friend of A.T., a minor,

    Plaintiff,

      v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 03-1791 (CKK)

**MEMORANDUM OPINION**
(July 29, 2005)

    Plaintiff Lisa Ann Thomas, on behalf of her minor son, A.T., brought this action under

the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et. seq.*, against

Defendant, the District of Columbia. The IDEA provides that all children with disabilities will

be provided a free and appropriate public education ("FAPE"), and provides for procedural

safeguards to ensure that disabled children receive individualized education programs ("IEP") to

fulfill the Act's goals. This case comes to the Court on appeal from the June 30, 2003 Hearing

Officer Determination ("H.O.D.") and related proceedings.

    Currently before the Court are Plaintiff's Motion for Summary Judgment ("Pl.'s Mot.

Summ. J."), Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Cross-

Motion for Summary Judgment ("Def.'s Opp'n"), and Plaintiff's Combined Opposition to

Defendant's Cross-Motion for Summary Judgment and Plaintiff's Reply to Defendant's

Opposition fo Plaintiff's Motion for Summary Judgment ("Pl.'s Comb'd Opp'n"). Upon a

searching examination of the present filings, the relevant case law, and the entire record herein,

the Court shall deny-in-part Plaintiff's Motion for Summary Judgment, grant-in-part and deny-in-

part Defendant's Cross-Motion for Summary Judgment, and shall remand the case to the Hearing Officer for further proceedings.

## I: BACKGROUND

A.T. is a disabled sixteen (16) year-old who has been found eligible for special education by District of Columbia Public Schools ("DCPS").[1]  Compl. ¶ 7; Pl.'s Stmt. of Facts ¶ 1; Def.'s Stmt. ¶ 1.  In June 1996, A.T. was placed in DCPS, but was not referred for evaluation and assessment of special education needs as required by the then-controlling statute.  Compl. ¶ 30; *see* D.C. Mun. Regs. tit. 5, § 2201.9; Pl.'s Stmt. of Mat. Facts ¶¶ 2, 5.  In November 1998, Lisa Ann Thomas, A.T.'s mother, filed a written request that DCPS assess and evaluate her son for special education needs, and on February 3, 1999, Ms. Thomas filed a request for a Due Process hearing to challenge DCPS's failure to evaluate A.T. in a timely manner.  Compl. ¶¶ 31-32.  On April 26, 1999, DCPS drafted and subsequently developed an IEP for A.T.  *Id.* ¶¶33-34; Def.'s Stmt. of Mat. Facts ¶ 5.  Ms. Thomas requested DCPS re-evaluate that IEP on February 15, 2000. *Id.*

On February 15, 2000, DCPS conducted a Due Process hearing, approximately one (1) year after the initial request was made.  Compl. ¶ 35; Pl.'s Stmt. of Mat. Facts ¶ 6; Def.'s Stmt. of Mat. Facts ¶ 6.  In the resulting decision, the Hearing Officer (1) ordered DCPS to complete neurological and psychological evaluations of A.T., (2) outlined the steps to be taken to address compensatory services, and (3) gave the family the right to a new hearing if concerns over compensatory services were not resolved.  Compl. ¶ 35; Pl.'s Stmt. of Mat. Facts ¶ 5; Pl.'s Stmt.

---

[1] Plaintiff A.T., born April 28, 1989, was fourteen (14) years of age when the Complaint was filed.

of Mat. Facts ¶ 6; *see also* Admin. R. 25-30.  The claim of compensatory services was preserved

against the statute of limitations in an October 2000 H.O.D., and the claim for compensatory

services was also reserved in the settlement outlined in the November 2001 H.O.D.  Compl. ¶¶

36-37; *see also* Admin. R. 34-36, 45-48.  Pursuant to a new hearing request on August 7, 2002,

DCPS issued a placement notice in September 2002 and appropriately placed A.T. at High Road

School.  Compl. ¶¶ 38-39; Pl.'s Stmt. of Mat. Facts ¶ 10.

     In March 2003, Ms. Thomas amended her pending hearing request from August 2002 to

seek only compensatory services for the denial of FAPE, and on May 28, 2003 the parties

participated in a due process hearing on the request with Hearing Officer Terry Michael Banks

presiding.  Compl. ¶¶ 40-41; Pl.'s Stmt. of Mat. Facts ¶¶ 12-15; Def.'s Stmt. of Mat. Facts ¶ 12.

At this hearing, DCPS presented no witnesses, entered no exhibits other than Plaintiff's hearing

request and its disclosure statement, and offered no closing.  Pl.'s Stmt. of Mat. Facts ¶ 12.

DCPS did not present, and the Hearing Officer did not discuss, the potential impact of claim

preclusion and *res judicata* on Plaintiff's claims.  *Id.* ¶ 13.  Plaintiff, on the other hand, offered

uncontested testimony and presented numerous exhibits in support of her argument that A.T. was

denied a FAPE from June 1996, the date the DCPS retained A.T. without referral, until

September 9, 2002, the date DCPS placed A.T. at High Road School.  *Id.* ¶ 15.  Plaintiff sought

compensatory services for a six (6) year denial of a FAPE, in the form of one-on-one tutoring at

the rate of 200 hours per academic year/special education summer school.  *Id.* ¶ 16.

     In the June 30, 2003 H.O.D. resulting from the May 28, 2003 hearing, the Hearing Officer

found that DCPS was only responsible for failing to comply with the November 30, 2001

H.O.D., and awarded compensatory education only for the period from that date until September

2002 when A.T. was properly placed.  Compl. ¶ 44; Pl.'s Stmt. of Mat. Facts ¶ 17; Def.'s Stmt.

of Mat. Facts ¶ 18.  The Hearing Officer based his decision almost entirely on *res judicata* and

claim preclusion, which he raised *sua sponte* in his H.O.D.  Pl.'s Stmt. of Mat. Facts ¶ 18;

Compl., Ex. 2 (June 30, 2003 H.O.D.) at 4 n.11.  Plaintiff filed a Motion for Reconsideration on

July 20, 2003, which the Hearing Officer denied on August 1, 2003, two (2) days after the initial

deadline for filing an appeal on the H.O.D. had passed.  Compl. ¶¶ 45-46; *but see* Compl., Ex. 3

at 3 (Reconsideration Order) (the Hearing Officer notes that Plaintiff's Motion for

Reconsideration was filed on July 29, 2003); Pl.'s Stmt. of Mat. Facts ¶¶ 19-20.  Due to a

typographical error, the June 30, 2003 H.O.D. awarded A.T. compensatory education for an

eleven (11) year period as opposed to the intended ten (10) month period; this error was corrected

subsequently on August 4, 2003.  Compl. ¶ 48; Pl.'s Stmt. of Mat. Facts ¶ 24; Def.'s Stmt. of

Mat. Facts ¶¶ 18-20.  This new ruling reset the thirty (30) day time limit for appeals of the

Hearing Officer's decision to this Court, and Plaintiff filed her Complaint in this action on

August 26, 2003 -- safely within the period of appeals.  Defendant does not dispute the timeliness

of Plaintiff's current action before this Court.  *See* Def.'s Opp'n at 15 ("[D]efendant does not

dispute that plaintiffs' appeal to this court is timely.").

     Plaintiff's present Complaint includes ten (10) Counts.[2]  Count I alleges that the Hearing

Officer was a DCPS employee and was therefore barred from hearing the case, Compl. ¶¶ 57-58;

Count II asserts that A.T.'s Due Process right to an impartial hearing was violated because

Plaintiff was forced to present her motion for recusal to the same Hearing Officer against whom

---

[2] Some of these Counts and the corresponding claims within them were abandoned by
Plaintiff at the summary judgment phase, and no argument was introduced by the parties.  *See*
*infra* Section IV.

the complaint was lodged, Compl. ¶¶ 59-60; Count III contends that their right to an impartial

hearing was violated because the Hearing Officer engaged in *ex parte* communication with

DCPS, Compl. ¶¶ 61-62; Count IV claims that DCPS failed to properly train and monitor two of

its recently employed Hearing Officers, Compl. ¶¶ 63-64; and Count V avers that the Hearing

Officer impermissibly shifted the burden of proof from DCPS to Plaintiff, Compl. ¶¶ 65-66.

Count VI alleges that the Hearing Officer incorrectly held that a part of A.T.'s entitlement to

compensatory services was barred by claim preclusion or *res judicata*, Compl. ¶¶ 67-68; Count

VII contends that the Hearing Officer incorrectly held that a motion for reconsideration is not

permitted under the IDEA, Compl. ¶¶ 69-70; Count VIII asserts that the DCPS denied A.T.

procedural Due Process by failing to conduct the Due Process hearing and issue the H.O.D. in a

timely manner, Compl. ¶¶ 71-72; Count IX claims that the DCPS denied A.T. procedural Due

Process by issuing, maintaining and implementing the August 31, 2001 *Perelman* Memorandum

(attached to the Complaint as "Exhibit 1"), Compl. ¶¶ 73-74; and Count X alleges that DCPS

violated A.T.'s right to procedural Due Process by vesting one (1) employee with both the

authority to approve or modify payment of attorney's fees and the authority to decide whether to

bring cases to court or settle, because it creates a conflict of interest between plaintiffs and their

counsel, Compl. ¶¶ 75-76.

## II: STATUTORY FRAMEWORK

The purpose of the IDEA is "to ensure that all children with disabilities have available to

them a free appropriate public education ["FAPE"] that emphasizes special education and related

services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A).  "Implicit" in the

IDEA's guarantee "is the requirement that the education to which access is provided be sufficient

to confer some educational benefit upon the handicapped child." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 200, 102 S. Ct. 3034, 73 L.Ed. 2d 690 (1982).

As a condition of funding under the IDEA, the Act requires school districts to adopt procedures to ensure appropriate educational placement of disabled students. *See* 20 U.S.C. § 1413. School districts must also develop comprehensive plans for meeting the special educational needs of disabled students. *See* 20 U.S.C. § 1414(d)(2)(A). These plans, known as IEPs, must include a written "statement of the child's present levels of educational performance, . . . a statement of the measurable annual goals, [and] a statement of the special education and related services . . . to be provided to the child." *See* 20 U.S.C. § 1414(d)(1)(A).

A student's eligibility for a FAPE under the IDEA is determined by the results of testing and evaluating the student, and the findings of a "multidisciplinary team" and/or "individualized educational plan team" ("MDT/IEP team"). Such a team consists of the disabled student's parents, teachers, and other educational specialists, who meet and confer in a collaborative process to determine how best to accommodate the needs of the students to provide a FAPE. *See* 20 U.S.C. § 1414(d)(1)(B). In the case of a child whose behavior impedes his or her learning or that of others, the IEP team shall consider "when appropriate, strategies, including positive behavioral interventions, strategies, and supports to address that behavior." *Id.* § 1414(d)(3)(B)(i). The federal regulations interpreting the IDEA require that a meeting to develop an IEP be held within thirty (30) days of the determination of a child's need for special education

and related services. 34 CFR § 300.343(b)(2).[3] The District of Columbia's regulations follow suit. 5 D.C. Mun. Regs. § 3007.1.

The IDEA also guarantees parents of disabled children the opportunity to participate in the evaluation and placement process. *See* 20 U.S.C. § 1414(f), 1415(b)(1). "The IEP team shall conduct an initial evaluation of a child within a reasonable time of receiving a written referral and parental consent to proceed within timelines consistent with Federal law and D.C. Code § 38-2501(a)." D.C. Mun. Regs., Tit. 5, § 3005.2. The regulations require DCPS to use "a variety of assessment tools and strategies" to gather "relevant functional and developmental information about the child." *Id.* § 3005.9(b). Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due process hearing, *see* 20 U.S.C. §§ 1415(b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel." 20 U.S.C. § 1415(h)(1). A qualified impartial Hearing Officer conducts the due process hearing in accordance with the Act. D.C. Mun. Regs., Tit. 5, § 3030.1. Under the IDEA, a party is entitled to attorney's fees and costs if he or she is a "prevailing party." 20 U.S.C. § 1415(i)(3)(B). To be the prevailing party, one must gain a "material alteration of the legal relationship of the parties" and gain judgment on the merits. *Bridgeforth v. Dist. of Columbia*, 933 F. Supp. 7, 10 (D.D.C. 1996).

---

[3] On November 13, 2003, the District of Columbia amended the statute that required DCPS to assess and evaluate a student who may have a disability and who may require special education services, changing the amount of time allotted for completion of the evaluation from sixty (60) days to one hundred and twenty (120) days. *See* D.C. Code § 38-2501. The amended statute allots one hundred and twenty (120) days within learning of a child's disability to locate an appropriate placement. *Id.* §§38-2501(a) & (b).

Parents "aggrieved by" a Hearing Officer's findings and decision may bring a civil action in either state or federal court. 20 U.S.C. § 1415(i)(2); D.C. Mun. Regs., Tit. 5, § 3031.5. The district court has remedial authority under the Act, and broad discretion to grant "such relief as the court determines is appropriate" under the IDEA as guided by the goals of the Act. 20 U.S.C. § 1415(i)(2)(B)(iii).

### III: LEGAL STANDARDS

*A.     Summary Judgment*

In this case the Court is presented with cross motions for summary judgment. A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). To be material, the factual assertion must be capable of affecting the

substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient

admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.

*Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at

251, 106 S.Ct. 2505 (the court must determine "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative,

summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50, 106 S.Ct. 2505

(internal citations omitted). "Mere allegations or denials in the adverse party's pleadings are

insufficient to defeat an otherwise proper motion for summary judgment." *Williams v.

Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply

"show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.

Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead,

while the movant bears the initial responsibility of identifying those portions of the record that

demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant

to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587,

106 S.Ct. 1348 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

  B.  *The IDEA*

   The IDEA permits "any party aggrieved by the findings and decision" rendered during

administrative proceedings to "bring a civil action" in state or federal court without regard to the

amount in controversy. 20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.512(b)(3). The reviewing court

"shall receive the records of the administrative proceedings, shall hear additional evidence at the

9

request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); 34 C.F.R. § 300.512(b)(3). In a review of an H.O.D., the burden of proof is always on the party challenging the administrative determination, who must "at least take on the burden of persuading the court that the Hearing Officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so." *Reid v. Dist. of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)).

The Supreme Court has interpreted the "preponderance standard of review not to be an allowance of unfettered *de novo* review." *Id.* (quoting *Rowley*, 458 U.S. at 206, 102 S. Ct. 3034). Courts must give administrative proceedings "due weight," *id.*, and "[f]actual findings from the administrative proceedings are to be considered prima facie correct." *Id.* (quoting *S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003)). Courts may not substitute their own views for those of the Hearing Officer, *see Rowley*, 458 U.S. at 206, 102 S. Ct. 3034; *Shaw v. Dist. of Columbia*, 238 F. Supp. 2d 127, 135 (D.D.C. 2002), and a court upsetting a Hearing Officer's decision "must at least explain its basis for doing so." *Dist. of Columbia v. Ramirez*, --- F. Supp. 2d ----, 2005 WL 1540798, at *3 (D.D.C. July 1, 2005) (quoting *Kerkam*, 862 F.2d at 887). However, the statute also suggests "less deference than is conventional in administrative proceedings," *Reid*, 401 F.3d at 521, since the district court is allowed to hear additional evidence at the request of the party. 20 U.S.C. § 1415(i)(2)(C)(ii). When no additional evidence is introduced in a civil suit seeking review of an H.O.D., a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record. 20 U.S.C. § 1415(i)(2)(B); *Ramirez*, --- F. Supp. 2d ----, 2005 WL 1540798, at *3.

10

**IV: DISCUSSION**

Plaintiff moves for summary judgment on the grounds that: (1) The Hearing Officer was biased in favor of DCPS; (2) the Hearing Officer engaged in *ex parte* communication with DCPS; (3) DCPS's arrangement with the Hearing Officer ensured that the Hearing Officer was a DCPS "employee"; (4) the June 30, 2003 H.O.D. and subsequent rulings were not supported by fact and were erroneous as a matter of law; and (5) the Hearing Officer wrongfully delayed ruling on Plaintiff's Motion to Reconsider until the right to appeal had apparently expired. Pl.'s Mot. Summ. J. at 1-2. Defendant disputes each of these arguments, and moves for summary judgment on the grounds that "[t]he evidence in the record of this case supports the decision of the Hearing Officer." Def.'s Opp'n at 15.

Plaintiff's appeal raises two major questions. The first question is whether the integrity of the proceedings was compromised because the Hearing Officer was biased. The second question is whether the H.O.D. was legally and factually supported. While Plaintiff does not present sufficient evidence to establish Hearing Officer bias, the Court finds that the Hearing Officer impermissibly limited the time period for which compensatory education could be awarded.

    A.    *Plaintiff Fails to Establish that the Hearing Officer Was Biased*

Plaintiff contends that the Hearing Officer was biased, necessitating the reversal of his June 30, 2003 H.O.D., because (1) bias can be inferred from the Hearing Officer's delayed ruling on her Motion for Reconsideration, which could have prejudiced Plaintiff's attempts at appeal; (2) the Hearing Officer allegedly conducted *ex parte* communications with the DCPS's counsel; and (3) he was apparently an employee of DCPS and was therefore unable to act as a truly neutral

arbiter.  The Tenth Circuit has held that Hearing Officer "enjoys a presumption of honesty and

integrity, which is only rebutted by a showing of some substantial countervailing reason to

conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated."

*Harline v. Drug Enforcement Admin.,* 148 F.3d 1199, 1204 (10th Cir. 1998) (citing *Withrow v.*

*Larkin,* 421 U.S. 35, 47 (1975)); *see also Schweiker v. McClure,* 456 U.S. 188, 195, 102 S.Ct.

1665, 72 L.Ed.2d. 1 (1982) ("We must start . . . from the presumption that the hearing officers

who decide Part B claims are unbiased.  This presumption can be rebutted by a showing of

conflict of interest or some other specific reason for disqualification.")  (citations omitted);

*Bunnell v. Barnhart*, 336 F.3d 1112, 1114 (9th Cir. 2003) ("appearance of impropriety" standard

does not apply to administrative law judges); *c.f. Greenberg v. Bd. of Governors of Fed. Reserve*

*Sys.*, 968 F.2d 164, 166-67 (2d Cir. 1992) (same).

     In an attempt to overcome this presumption and show "substantial countervailing

reasons" indicating bias, Plaintiff directs the Court's attention to *Blackman v. District of*

*Columbia*, 294 F. Supp. 2d 10 (D.D.C. 2003), where plaintiffs, including Plaintiff in this case,

filed a motion to establish a monitor to ensure impartiality and proper training of Hearing

Officers.  The *Blackman* plaintiffs alleged that the due process hearings "were delayed or

continued improperly" and "that the basis for the delays is Mr. Banks's bias."  *Id.* at 14.[4]  Judge

---

     [4] Mr. Banks was also the relevant Hearing Officer in this case.  *See* R. at 2-7 (June 30,
2003 H.O.D.).  In *Blackmun*, Plaintiff (Ms. Thomas) alleged the very same violations and legal
errors that are the focus of this case.  *See Blackmun*, 294 F. Supp. 2d at 12.  The other plaintiffs
also contended that Mr. Banks entered an H.O.D. that substantially altered the terms of the
agreement in favor of the DCPS without consulting the parties, failed to recuse himself when
requested on multiple occasions, improperly castigated a plaintiff's counsel, acted
unprofessionally, prematurely concluded a hearing and scheduled the rehearing beyond the
limitations period.  *Id.* at 12-13.

Paul Friedman found that "[p]laintiffs' claims, if true, are serious," and that although the motion

was not an appropriate part of the consolidated class action in *Blackman*, Judge Friedman

mentioned in *dicta* that the claims "may be proper bases for an appeal from the H.O.D.'s." *Id.* at

14.  This Court agrees that claims of bias must be taken seriously, but concludes that each of

Plaintiff's three (3) arguments asserting bias lack merit.

         1.     The Hearing Officer's Order on Motion for Reconsideration Does Not
                 Establish Bias

      Plaintiff alleges that the August 1, 2003 Hearing Officer's Order on Motion for

Reconsideration ("Reconsideration Order"), Compl., Ex. 3 (Reconsideration Order),[5] "should

speak for itself as to the Hearing Officer's bias."[6]  Pl.'s Mot. for Summ. J. at 21.  Plaintiff

contends that bias is evident from this ruling in two ways.  <u>First</u>, Plaintiff asserts that a finding of

bias may be adduced from the fact that the Hearing Officer did not issue the Reconsideration

Order until August 1, 2003 -- two (2) days after the thirty (30) day period for appealing the June

30, 2003 H.O.D. had expired.  Two problems exist with this claim.  First, Plaintiff herself sat on

her rights for some period of time.  Importantly, Plaintiff did not file the Motion for

Reconsideration until July 20, 2003, which, despite being "well prior to the 30 days deadline for

---

     [5] Plaintiff's exhibits are attached to Plaintiff's Complaint in this action.

     [6] The Motion for Summary judgment quotes from the August 1, 2003 Reconsideration
Order:

       The hearing officer notes that counsel filed this Motion, which contains no coherent
       arguments supporting a reconsideration of the H.O.D., on the day before the deadline for
       filing an appeal.  If counsel seriously believes that the hearing officer's ruling is
       erroneous, the hearing officer trusts that counsel fulfilled his obligation to preserve his
       client's right to appeal a decision counsel believes to be factually and legally flawed.

Pl.'s Mot. for Summ. J. at 21-22.

appealing the H.O.D." was also twenty (20) days after the initial ruling.  Pl.'s Mot. for Summ. J.

at 21.[7]  Given the busy schedule of Hearing Officers in general and the detail and length of the

Reconsideration Order itself, the issuance of a ruling within twelve (12) days of a motion is not

unreasonable, nor is it the kind of clear sign of bias that Plaintiff contends.  *See* Pl.'s Mot. for

Summ. J. at 24 ("[T]he hearing officer's effort to cut off appeal was ineffectual, but it certainly is

proof of his continuing bias").  Second, the filing of a Motion for Reconsideration is not a

prerequisite for successful appeal.  Indeed, Motions for Reconsideration are not routine filings,

and should only be entered if the motion itself meets the narrow grounds specified in the

established standard of review for such a motion.  Here, if Plaintiff wanted to avoid the danger

that the Hearing Officer might take too long to issue his Reconsideration Order because of

scheduling difficulties or the time it takes to draft an opinion, she could simply have appealed

directly to this Court and avoided the reconsideration stage.  Nevertheless, Plaintiff was not

prejudiced in the end, as the Hearing Officer revisited his June 30, 2003 H.O.D. in his August 5,

2003 Typographical Error Order; because of this new Order, the previous June 30, 2003 H.O.D.

could not be considered a "final" ruling and the thirty (30) day appeals period was reset.  Within

this new time window, Plaintiff successfully filed her Complaint with this Court such that her

claims were not procedurally barred from consideration on the merits.  *See also* Def.'s Opp'n at

15 ("[D]efendant does not dispute that plaintiffs' appeal to this court is timely.").

---

[7] Plaintiff's timeline is contested by DCPS, as the Hearing Officer noted in his Reconsideration Order that Plaintiff's Motion for Reconsideration was actually filed on July 29, 2003 -- meaning that Plaintiff had waited until the last-second of the limitations period to file her motion.  *See* Compl., Ex. 3 at 3 (Reconsideration Order).  The Administrative Record shows that the motion was stamped as received by the Hearing Officer on July 29, 2003, but the certificate of service indicates it was mailed and faxed on July 20, 2003.  As such, it is possible that Plaintiff sat on her rights for nine (9) days longer than even she admits.

<u>Second</u>, Plaintiff complains that the ruling itself evinces bias.  Upon a review, it is clear that the Hearing Officer's Reconsideration Order rejected Plaintiff's Motion for Reconsideration for four reasons: (1) his belief that the IDEA makes no provision for motions for reconsideration; (2) Plaintiff's failure to present new facts; (3) Plaintiff's failure to explain how he impermissibly shifted Plaintiff's burden at the hearing; and (4) the fact that, despite Plaintiff's allegations, Hearing Officers are independent contractors, and are not employees of the DCPS.  *See* Compl., Ex. 3 (Reconsideration Order) at 3-4.  Defendant now admits that the Hearing Officer "erroneously stated that '[t]he regulations governing due process hearings under IDEA make no provision for motions for reconsideration.'"  Def.'s Opp'n at 15 (quoting Compl., Ex. 3 at 3). Jumping on this error of law, Plaintiff asserts, "Here the hearing officer made such a monumental mistake on such a simple litigation point of law that the District had to summarily concede the issue.  This justifies an inference [of bias]."  Pl.'s Comb'd Opp'n at 21.

Despite Plaintiff's dramatic conclusions, the mere fact that a Hearing Officer, administrative law judge, or court is ultimately incorrect as to a point of law does not lead to an inference that the adjudicator was biased.  As the Seventh Circuit recently noted,

> Rulings that on their face are justifiable therefore tell us little about whether compensatory bias was at work in the judge's decision-making.  Likewise, a judge may abuse his discretion, may even commit a "veritable avalanche of errors," without there being reason to suspect that bias was at work.  Judges make mistakes, period.  Bias, when it is at work, will not necessarily announce itself in either the judge's ruling or his rationale.

*Bracy v. Schomig*, 286 F.3d 406, 434 (7th Cir. 2002) (internal citations omitted); *see also* Alexander Pope, An Essay On Criticism, l. 522 (1711) ("Good-nature and good-sense must ever join; to err is human, to forgive, divine.").  Moreover, the Hearing Officer did not rest his

15

Reconsideration Order entirely on his (erroneous) finding that the IDEA makes no provision for motions for reconsideration; rather, the Hearing Officer also considered the merits of Plaintiff's arguments, and found all three (3) of Plaintiff's other central assertions to be without merit. *See* Compl., Ex. 3 (Reconsideration Order) at 3-4. Given these facts, the Court concludes that bias cannot be inferred from the Hearing Officer's Reconsideration Order.

 2. The Alleged *Ex Parte* Communication Resulting in the Hearing Officer's Typographical Error Order Does Not Establish Bias

 Plaintiff also alleges that language in the Hearing Officer's August 5, 2003 Typographical Error Order, Compl., Ex. 4 (Typographical Error Order), establishes Hearing Officer bias. The Typographical Error Order states that "the hearing officer was advised that Petitioner's counsel had made a demand for 1200 hours of compensatory relief from DCPS on the basis [of the typographical error]." *See* Compl., Ex. 4 (Typographical Error Order) at 3. Plaintiff has two corresponding complaints regarding this Order. First, Plaintiff asserts that the Hearing Officer must have engaged in *ex parte* communication for him to have been "advised" of the error. Second, Plaintiff contends that the Typographical Error Order incorrectly states that Plaintiff had attempted to wrongfully use the typographical error as the basis for an inflated compensatory relief demand from the DCPS. *See id.* Plaintiff rejects this finding, and claims that "[b]y its very falsity, [the statement] showed the extent of the hearing officer's bias." Pl.'s for Mot. Summ. J. at 23 (noting that "this counsel had informed the DCPS MDT team leader of the error, but continued to claim compensatory services for the entire six year period, in the approximate amount of 1200 hours of tutoring, and intended not to rely on the scrivener's error, but to appeal the adverse hearing officer's decision").

Upon a careful review, it is evident that both of these allegations lack merit.  First, Plaintiff fails to introduce any evidence that an *ex parte* communication between the Hearing Officer and the DCPS actually took place.  Even assuming *arguendo* that counsel for DCPS did contact the Hearing Officer, Plaintiff fails to show that any prohibited matters were discussed or that DCPS made an improper attempt to influence the trier of the case.[8]  Indeed, to the extent that a clerical error in a decision is detected by a party, the party has an affirmative obligation to inform the decision-maker such that the resulting Opinion reflects what was intended and actually decided.  Finally, Plaintiff admits that her Motion for Reconsideration itself pointed out "the [H]earing [O]fficer's apparent error in using the year 1991 instead of the year 2001 as a starting point," -- i.e., the very subject of the Hearing Officer's Typographical Error Order.  Pl.'s Mot. for Summ. J. at 21.  As such, it is entirely possible that upon a re-review of Plaintiff's Motion for Reconsideration after his initial Reconsideration Order, the Hearing Officer discovered the error.  Given these factors, the Court cannot conclude that an *ex parte* communication did occur, or that -- if such a conversation did take place -- that it reflected the bias of the Hearing Officer.

Second, even assuming that Plaintiff is correct in asserting that she never attempted to rely on the typographical error as the basis for the compensatory relief demands made to the DCPS, the apparent error or mistake by the Hearing Officer is simply insufficient to establish that

---

[8] Plaintiff mentions in her Motion for Summary Judgment that "[w]hen a parent requests a hearing on DCPS's failure to provide FAPE, DCPS has the burden of proof at all stages of the proceeding."  Pl.'s Mot. for Summ. J. at 14 (citing D.C. Mun. Reg., tit. 5, § 3030.3).  Plaintiff alleges that "DCPS shifts yet another burden to plaintiffs [and t]his time the burden is to identify the DCPS employee with whom the hearing officer had the improper communication."  Pl.'s Opp'n at 14.  The statute only refers to the burden of showing FAPE was provided, however; it does not put the burden on DCPS regarding any and all allegations.

he had bias or personal animus against Plaintiff.  Simply because a Hearing Officer

misunderstands the oft-confusing and conflicting facts before him does not entail an inference or

finding or bias.  Once again, the Court is unwilling to infer bias based on a mere mistake or error.

> 3.  Plaintiff has not shown that the Hearing Officer was an employee of DCPS

Plaintiff also alleges that the Hearing Officer was a DCPS employee in violation of the

Code of Federal Regulations, which states that a hearing officer cannot be "an employee of the

State agency . . . that is involved in the education or care of the child."  34 C.F.R. §

300.508(a)(1).  Plaintiff's assertion is based solely on the alleged testimony of "Dr. Wendy Ghee

[sic]," Director of the DCPS Office of Management Services, which supposedly appears on the

DCPS Channel 28 VIDEO RECORD of June 25, 2003.  Pl.'s Stmt. of Mat. Facts at ¶¶ 3-4; *but

see* Def.'s Stmt. of Mat. Facts at ¶¶ 3-4 (disputing Plaintiff's recollection).  At the June 25, 2003

hearing, Plaintiff contends that Dr. Gee testified that all hearing officers were full-time DCPS

employees.  *Id.* at ¶ 4; *but see* Def.' Stmt. of Mat. Facts at ¶ 4 (contravening Plaintiff's claim).

Plaintiff asks that the Court take judicial notice of the remarks or order DCPS to produce the

tape.  The tape has not been produced by either party.[9]

Upon a review of the record, all available evidence undermines Plaintiff's unsubstantiated

recollection of the June 25, 2003 hearing and her argument that Dr. Gee testified that Hearing

Officers were DCPS employees.  Hearing Officer Banks has consistently notified Plaintiff that he

"is not an employee of DCPS, but serves pursuant to a contract with DCPS executed on January

---

[9] The Court notes that it would be improper for the Court to take judicial notice of this fact, given that it is contested by the DCPS and all evidence indicates that Plaintiff is incorrect in her recollection.

30, 2003, in which the hearing officer was appointed as an independent contractor." *See, e.g.*, Compl., Ex. 3 (Reconsideration Order) at 3-4.  Indeed, the District of Columbia has enacted numerous regulations to prevent Hearing Officers from being hired as D.C. employees.  *See* D.C. Mun. Regs., tit. 5, § 2406.2 ("All hearing officers shall be contracted for by the D.C. Public Schools on a full-time or part-time basis to serve in that capacity . . . .  Hearing officers in cases involving special education issues shall not be employees of public agencies which are involved in the education or care of the child for whom the hearing in being held."); D.C. Mun. Regs., tit. 5 §§ 2407.3, 2407.1, 2407.2 (while DCPS's Student Hearing Office coordinates the hiring and scheduling of Hearing Officers, those Hearing Officers function independently and the Student Hearing Office may not interfere with their decisions).  Moreover, Mr. John M. Cashmon, Director of Compliance for DCPS, in an August 18, 2004 memorandum entitled "Request for Information regarding [A.T.] Affidavit," stated:

> I was present at that hearing with Dr. Gee and heard her testimony regarding the hearing officers.  She explained to the committee members present the changes that DCPS made in the use of hearing officers and how the system had moved from a payment per hearing system to contracting with individual hearing officers for periods of time where they would be available to hear cases.  Dr. Gee further explained that the hearing officers were not employees of DCPS because of the requirements both in the Individuals With Disabilities Education Act (IDEA) and the federal regulations that the hearing officers be independent of DCPS.  At no time during this hearing did Dr. Gee state that the hearing officers were employees of DCPS.  On the contrary, Dr. Gee had worked to establish a system of contracts for the hearing officers that would keep them as an independent contractor.

Def.'s Opp'n, Ex. 1 (7/18/04 Cashmon Memo) at 1.  Finally, DCPS's own Special Education Student Hearing Office Manual, posted on its web page, outlines the qualifications of hearing officers in Section 305.2 and species that Hearing Officers are not -- and cannot be -- employees of DCPS.  *Id.* at 1-2 (quoting Section 305.2).

Given this veritable deluge of evidence, it is evident that Plaintiff's unsupported, unsubstantiated accusation that Hearing Officers are employees of the DCPS is simply without merit. Plaintiff has adduced no evidence whatsoever to support her claim. Such a failure entails that summary judgment in favor of Defendant as to this point is appropriate. *See Laningham*, 813 F.2d at 1242 (requiring nonmovant "to provide evidence that would permit a reasonable jury to find" in its favor).

B.   *The June 30, 2003 Hearing Officer's Determination Impermissibly Limited the Period for Compensatory Education and Must Be Overturned*

Plaintiff also contends that the various H.O.D.s issued by Hearing Officer Banks "were not supported by fact and were erroneous as a matter of law." Pl.'s Mot. for Summ. J. at 2. Plaintiff's central argument is that the Hearing Officer's application of *res judicata* to A.T.'s compensatory education claim was improper given the fact that counsel for Plaintiff specifically reserved and preserved all such claims during the earlier H.O.D.s. *See, e.g.*, Admin. R. 36 (October 3, 2000 H.O.D. stipulating that "the parent's right to claim compensatory education services, if any, is preserved, including preserved against a statute of limitations defense"); Admin. R. 48 (November 13, 2001 H.O.D. stipulating that "[t]he parent's rights to later seek compensatory education shall be reserved"). As such, Plaintiff claims that Hearing Officer Banks incorrectly limited the period for which compensatory education was due to A.T. to the number of school days between November 30, 2001 and September 9, 2002. S*ee* Compl., Ex. 2 at n.11 (June 30, 2003 H.O.D.).

In contrast, Defendant contends that "there is no evidence on the record that the student's needs are not now being adequately addressed or why additional special education services are

necessary to ensure that the student is achieving some educational benefit." Def.'s Opp'n at 13.

Defendant further argues that "plaintiffs have failed to offer proof regarding why the Hearing

Officer's award is 'inappropriate' to achieve what is required by the act." *Id.* at 14. In rebuttal,

Plaintiff points out that A.T. "is at the third grade academic performance level, now in or

approaching high school." Pl.'s Comb'd Opp'n at 22; *see also id.* at 13 ("[T]he fact that [A.T.] is

at least five years behind is conclusive proof that DCPS has not provided FAPE"); Admin. R. at

50-60 (March 13, 2003 IEP). Moreover, according to Plaintiff, Defendant's arguments

impermissibly attempt to shift the burden of proof to A.T., in contradistinction to D.C. Municipal

Regulations, which stipulate that "[t]he LEA shall bear the burden of proof . . . that the action or

proposed placement is adequate." D.C. Mun. Regs. tit. 5, §3030.3.

 Upon a searching examination of the Record, the Court concludes that the Hearing

Officer erroneously limited the time period for which compensatory education is available, as it

is clear from the earlier H.O.D.'s that counsel for Plaintiff was careful in reserving all rights as to

A.T.'s compensatory education claim. Importantly, each of the prior H.O.D.'s included language

specifically aimed at preventing the kind of claim preclusion or *res judicata* ruling entered by

Hearing Officer Banks in his June 30, 2003 H.O.D. *See, e.g.*, Admin. R. at 36 (October 3, 2000

H.O.D.) ("The parent's right to compensatory education services, if any, is preserved, including

preserved against a statute of limitations defense."); *id.* at 48 (November 13, 2001 H.O.D.) ("The

parent's rights to later seek compensatory education shall be reserved."). Moreover, each of

these earlier rulings constituted a constructive finding of a denial of FAPE and a violation of the

IDEA. *See* Admin. R. at 25-30 (February 28, 2000 H.O.D.) (A.T. obtained relief in the form of

evaluations and in-house services while he was home-bound as the result of a sledding accident,

and the Hearing Officer ordered a forum for the determination of compensatory services), 31-33

(May 24, 2000 H.O.D.) (A.T. was provided relief in the form of additional in-home services and

an extended deadline of the forum for the determination of compensatory services), 34-36

(October 3, 2000 H.O.D.) (A.T. obtained substantial relief in the form of the right to several

independent evaluations paid for by DCPS), 48 (October 31, 2001 H.O.D.) (A.T. obtained relief

in the form of a contingent entitlement to a DCPS funded EEG and the forwarding of placement

packages to possible placements, including High Road School of Washington).  Given these two

factors, the Hearing Officer's reliance on *res judicata* to reduce Plaintiff's claim for

compensatory education to only the period between November 30, 2001 and September 9, 2002

was erroneous.

      However, this Court cannot determine the appropriate amount of compensatory services

based on the information in the Record.  Plaintiff contends that students are entitled to one (1)

hour of services for each (1) day of denial of FAPE under the default formula articulated in

*Harris v. District of Columbia*, No. 91-1660, 1992 WL 205103 (D.D.C. August 7, 1992).  Pl.'s

for Mot. Summ. J. at 17; *see also* Pl.'s Comb'd Opp'n at 10 ("In the very case DCPS cites and

relies on, the hearing officer awarded one hour of compensatory services for each day of denial.

That is precisely what is sought here.") (citation omitted).  However, the D.C. Circuit Court

recently rejected the use of this formula in *Reid v. District of Columbia,* 401 F.3d 516 (D.C. Cir.

2005).  Rather, the *Reid* court held that a "cookie-cutter approach runs counter to both the 'broad

discretion' afforded by the IDEA's remedial provision and the substantive FAPE standard that

provision is meant to enforce."  *Id.* at 523.  As the D.C. Circuit explained, "just as IEPs focus on

disabled students' individual needs, so must awards compensating past violations rely on

individualized assessments." *Id.* at 524.

It may be conceivable that no compensatory education is required for the denial of FAPE from before November 2001, either because it would not help or because A.T. has flourished in his current placement, or, to the contrary, it may be that A.T. could would benefit from additional services.  That decision is not one for this Court to make based on the present Record.  "[T]he ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place."  *Reid,* 401 F.3d at 524.  In *Reid*, the Circuit Court found that:

> [I]n light of the absence of pertinent findings in the administrative record and given that both parties previously filed cross-motions for summary judgment rather than exercising their right to "request" consideration of additional evidence, the district court may determine that the "appropriate" relief is a remand to the hearing officer for further proceedings.

*Id.* at 526 (citations omitted).  Indeed, as Judge Henderson emphasized in her concurrence,

> despite the district court's equitable authority under the Individuals with Disabilities Act (IDEA), to "hear additional evidence at the request of a party" and to "grant such relief as the court determines is appropriate," the record in an IDEA case is supposed to be made not in the district court but primarily at the administrative level, where the parties and the school authorities, sometimes with input from other professionals, can tailor an individualized education plan (IEP) to the student's needs.

*Id.* at 527 (Henderson, J., concurring) (internal citations omitted).

Following the track suggested by the D.C. Circuit, the Court determines that the proper course is to remand the case back to the administrative level.  On remand, administrative proceedings should focus on the amount of assistance required to put A.T. in the position he should have been in had he not been denied FAPE from June 1996 to September 2002.

## V: CONCLUSION

Plaintiff has not established Hearing Officer bias, nor has she established that hearing officers are employees of DCPS for purposes of 34 C.F.R. § 300.508(a)(1).  While the hearing officer incorrectly invoked the doctrine of *res judicata* to limit the time period for which compensatory education could be awarded, the Court cannot grant Plaintiff's request for 1200 hours of compensatory education for A.T. due to the incomplete nature of the evidence currently before it.  As such, the Court shall deny-in-part Plaintiff's Motion for Summary Judgment, grant-in-part and deny-in-part Defendant's Cross-Motion for Summary Judgment, and shall remand the case to the Hearing Officer for further proceedings to determine the amount of compensatory education required to give A.T. the benefits that would likely have accrued had he been given a FAPE.  An appropriate Order accompanies this Memorandum Opinion.


Date:   July 29, 2005


                          /s/                          
                         COLLEEN KOLLAR-KOTELLY
                         United States District Judge